IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

RICKY A. PHILLIPS,                          )
                                            )
                    Plaintiff,              )
                                            )
v.                                          )        No. 2:08-CV-048
                                            )
MICHAEL J. ASTRUE,                          )
Commissioner of Social Security,            )
                                            )
                    Defendant.              )

## MEMORANDUM OPINION

        This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of

defendant Commissioner's final decision denying plaintiff's claim for disability insurance

and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social

Security Act.  For the reasons provided herein, defendant's motion for summary judgment

[doc. 13] will be denied, and plaintiff's motion for judgment on the pleadings [doc. 11] will

be granted to the extent it seeks remand under sentence four of § 405(g).[1]

---

[1]  "The court shall have power to enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,
with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

# I.

## *Procedural History*

Plaintiff applied for benefits in March 2004, claiming to be disabled by seizures, brain damage, borderline diabetes, and pain in his back, neck, and rib. [Tr. 50, 58].[2] Plaintiff alleges a disability onset date of October 20, 2003. [Tr. 50]. The application was denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") on October 3, 2006.

On December 1, 2006, the ALJ issued a decision denying benefits. He concluded that plaintiff suffers from the severe impairments of a seizure disorder and a cognitive disorder, but that those conditions are not equal, individually or in combination, to any impairment listed by the Commissioner. [Tr. 15-17]. The ALJ further concluded that plaintiff retains the residual functional capacity ("RFC") "to perform work at the light and medium level of exertion that does not involve hazardous work around dangerous machinery and unprotected heights and does not preclude the mental limitations outlined in Exhibit 9F." [Tr. 17].[3] Citing vocational expert testimony, the ALJ found that a significant number of jobs exist in the national and regional economies that plaintiff can perform. [Tr. 19-20]. Additionally, the ALJ concluded that plaintiff was not under a disability after December 2004

---

[2] Documents pertaining to plaintiff's SSI application are, according to the Commissioner, "not available for inclusion" in the administrative record. [Tr. 4]. Neither party contests that plaintiff does in fact presently have an SSI application pending.

[3] Exhibit 9F is the consultative report of clinical psychologist Sharon Joseph.

because he had engaged in substantial gainful activity. [Tr. 15]. Plaintiff was accordingly deemed ineligible for benefits.[4]

Plaintiff then sought, and was denied, review by the Commissioner's Appeals Council. [Tr. 5]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481. Through his timely complaint, plaintiff has properly brought his case before this court for review. *See* 42 U.S.C. § 405(g).

## II.

### *Background*

Plaintiff was born in 1962 and has an eleventh grade education. [Tr. 52, 261]. His past relevant employment is as a laborer and carpet installer. [Tr. 68]. He has been employed as a maintenance worker since December 2004. [Tr. 258, 261-62].

Plaintiff purports to be disabled by "uncontrolled" seizures, "constant" 9/10 back pain, and residual brain damage. [Tr. 59, 78, 124, 264]. Plaintiff can drive [Tr. 264], although his license was revoked in 1999 due to multiple DUI offenses. [Tr. 140].

---

[4] Even though he was currently employed on the date of his administrative hearing, plaintiff claimed difficulty in effectively completing a forty-hour workweek. [Tr. 262, 265, 267-68]. However, on appeal, plaintiff expressly challenges only that portion of the ALJ's decision pertaining to the period between October 20, 2003, and his January 2005 return to work. [Doc. 1, p.8]. Any challenge to the ALJ's ruling pertaining to the period of January 2005 to present has accordingly been waived. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

3

# III.

## *Analysis*

This court's review is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g)*; Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

4

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A).[5] Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id*.

---

[5] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. 42 U.S.C. § 1382. "Disability," for SSI purposes, is defined the same as under § 423. 42 U.S.C. § 1382c(a)(3).

## A. Remard

Dr. Norman Hankins testified as a vocational expert at plaintiff's administrative hearing. The ALJ presented a hypothetical claimant of plaintiff's size, education, and work history subject to certain physical limitations and "the intellectual endowment reflected in" the report of consulting clinical psychologist Sharon Joseph. [Tr. 271-72]. In response, Dr. Hankins identified a significant number of light and medium jobs existing in the state and national economies that the hypothetical claimant could perform. [Tr. 272]. The ALJ relied on that testimony to satisfy the Commisioner's step five burden - that work exists accommodating plaintiff's RFC and vocational factors.

However, the vocational hypothetical presented to Dr. Hankins does not match the RFC found in the ALJ's decision. The ALJ asked Dr. Hankins to consider only "the *intellectual endowment* reflected in" Dr. Joseph's report, whereas the ALJ's ultimate RFC finding included "the *mental limitations* of the report." [Tr. 17] (emphases added). To satisfy his step five burden, the Commissioner may rely on testimony of a vocational expert in response to a hypothetical question, but only if the hypothetical accurately portrays the claimant's impairments. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Dr. Joseph evaluated plaintiff in June 2004. She conducted a mental status examination including IQ testing. Plaintiff's full scale IQ was at the upper end of the low average range. [Tr. 141]. In addition, Dr. Joseph opined, "There is a significant difference

6

between the Verbal and the Performance IQ with the Performance IQ being 18 points higher. This is statistically significant to suggest the possibility of brain dysfunction or damage." [Tr. 141]. Dr. Joseph further opined that plaintiff's recent memory is moderately impaired [Tr. 142, 144], and that his concentration is mildly [Tr. 143] to moderately [Tr. 144] impaired.[6]

Dr. Joseph's assessment of possible brain damage is not inconsistent with the remainder of the administrative record. Plaintiff suffered a closed head injury in 2000. [Tr. 86]. A 2000 neuropsychological evaluation by Christina Wilson, Ph.D. noted word-finding difficulties, "some attentional inconsistency and inflexibility," and prominent "disorganization behaviorally." [Tr. 89-90]. Dr. Wilson "attribute[d] these cognitive impairments to his recent head injury given the frontal contusions and subarachnoid hemorrhage, though his previous head injuries and substance use may be contributory." [Tr. 90]. A May 2004 CT scan noted some right frontal damage probably secondary to prior injury. [Tr. 232].

The term "intellectual endowment" used in the ALJ's hypothetical can, in the court's view, only refer to plaintiff's *intelligence*. The court cannot conclude (and the Commissioner makes no argument) that the term "intellectual endowment" also encompasses abilities such as concentration and memory as addressed by Dr. Joseph. The ALJ purported

_____

[6] A nonexamining state agency source (identity and credentials illegible) subsequently generated a Mental RFC Assessment, predicting that plaintiff is moderately limited in some capacities relating to memory and concentration. [Tr. 149].

7

to give "great weight" [Tr. 18] to the opinions of Dr. Joseph and the state agency file-reviewer, yet both of those sources assessed moderate limitations of concentration and memory. Again, the ALJ's ultimate RFC conclusion included "the mental limitations" found by Dr. Joseph (memory and concentration), but the hypothetical question to Dr. Hankins did not. Thus, the ALJ's hypothetical did not match the RFC, and his final decision was not supported by substantial evidence. *See Varley.*, 820 F.2d at 779.[7]

This matter will therefore be remanded to the Commissioner for correction of the defects cited herein. In addition, as will be discussed below, the present administrative record hints that plaintiff's alcoholism may be a contributing factor material to his purported disability. "An individual shall not be considered to be disabled . . . if alcoholism . . . would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). On remand, and within his discretion, the Commissioner may wish to further examine the impact of plaintiff's alcoholism on this somewhat complicated case.

## B. Reversal

To the extent that plaintiff asks this court to award benefits rather than remanding his case, the request will be denied. A reviewing court can reverse and

_____

[7] The court additionally notes that in his decision the ALJ claimed to have "asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's *age*, education, [and] work experience . . . ." [Tr. 20] (emphasis added). However, the hypothetical presented to the vocational expert in fact only "assume[d] a man of claimant's *height, weight*, education and work background." [Tr. 271] (emphasis added). Plaintiff's age was never mentioned in the questioning of Dr. Hankins. [Tr. 271-73].

immediately award benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id.*

In addition to the issue regarding Dr. Joseph's findings, plaintiff argues that the opinion of consultative physical examiner Bennett Orvik should have received controlling weight. Dr. Orvik opined,

> Mr. Phillips appears to be somewhat limited in several ways. His previous brain injury may be more limiting than apparent on initial examination and his psychological evaluation should be very helpful in this regard. At the present time, he does not appear to be able to do any significant physical job activities, which is what he most did during his work career.

[Tr. 129]. In support of his opinion, Dr. Orvik cited positive straight leg raise testing, some ankle deformity, and some restricted range of motion "more due to pain and reluctance to perform full range of motion than to actual restriction of range of motion." [Tr. 127-28].

Plaintiff told Dr. Orvik that he experiences constant 9/10 pain in his back and left leg. Other source opinions validate that plaintiff does in fact suffer some pain. For example, chiropractor William Downer opined in November 2003 that plaintiff was unable to work at that time due to severe pain. [Tr. 219]. Other sources, however, have questioned the level of discomfort that plaintiff actually experiences. Consulting neurologist Abdelrahman Mohamed diagnosed degeneration in the cervical and lumbar spines in 2006

but opined that plaintiff "has more complaints of pain than he has actually organic disease." [Tr. 170]. Similarly, Dr. Orvik noted,

> He was totally unable to understand the concept of rating pain. He was asked to rate his pain on a scale of 0 to 10, he said he was having pain always at 9/10. He claimed to be having pain at a level of 9/10 while sitting calmly in the office discussing his history.

[Tr. 124].

The ALJ did not err in assigning minimal weight to Dr. Orvik's opinion for the reason that it is unduly based on plaintiff's subjective complaints. [Tr. 18]. The court additionally notes that Dr. Orvik's assessment seems to preclude only "significant physical job activities . . . [such as] what he most did during his work career." [Tr. 129]. Dr. Hankins testified that plaintiff's past relevant work was at the heavy or medium-to-heavy level, whereas the ALJ restricted plaintiff to the lesser levels of light and medium work - expressly concluding that plaintiff "is unable to perform any past relevant work." [Tr. 17, 19, 271]. Therefore, Dr. Orvik's assessment - even if credited - does not necessarily appear to conflict with the ALJ's conclusions.

The ALJ also did not err in finding that plaintiff's complaints appear to be overstated. [Tr. 18]. Drs. Orvik and Mohamed both found complaints of pain to be somewhat inconsistent with the supporting evidence, and in 2003 Dr. William Sembello described "range of motion . . . markedly decreased to the point of questionable malingering . . . ." [Tr. 214]. Also, plaintiff told Dr. Orvik that his constant 9/10 pain is further worsened by walking, lifting, bending, and riding in a vehicle. [Tr. 124-25]. However, he told Dr.

10

Joseph one month later that he can make his bed, vacuum, wash dishes, cook a meal, dust, clean his bathroom, mop, take out his garbage, walk to his mailbox, and shop for and put away groceries. [Tr. 143]. As noted by the ALJ, plaintiff's credibility on this point is further diminished by the fact that he was able to resume substantial gainful activity at the end of 2004. [Tr. 18].

It appears that plaintiff has also overstated the effect of his seizures. In an undated Disability Report completed sometime after *October* 11, 2004 [Tr. 76], plaintiff termed his termed his seizures "not controlled" and alleged that it was his seizures that prevented him from doing "the things I need to do." [Tr. 78]. However, plaintiff has twice told the Commissioner that he has not suffered a seizure since *March* 8, 2004. [Tr. 58-59, 264]. Therefore, plaintiff had not experienced a seizure for at least seven months when he completed the undated Disability Report. It was by that time less than accurate to call this condition "not controlled."

Additionally, the administrative record indicates that plaintiff has responded positively to some treatments and physical therapy [Tr. 160, 199, 213] but, unfortunately, he claims to be unable to afford necessary medical care. [Tr. 125]. Dr. Orvik, for example, noted that plaintiff "is getting essentially no treatment for his various problems." [Tr. 129]. Inexplicably, however, plaintiff can afford at least one pack of cigarettes per day [Tr. 92, 126, 140, 152], more than twenty sodas per week [Tr. 140], and an undetermined amount of alcohol. Plaintiff's style of life is completely inconsistent with that of a person who truly

11

suffers the degree of pain and limitation alleged. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988).

The court also notes considerable inconsistencies in plaintiff's statements regarding his alcohol consumption. In September 2000 Dr. Wilson wrote, "This individual admits to heavy beer intake to the point of intoxification on weekends for 'the last few years'. He reports that he stopped drinking alcohol on his own this spring 2000 and denies . . . current use of alcohol . . . ." [Tr. 87]. In July 2003, plaintiff told physician's assistant Karen Moots that he had only been sober for *four* months. [Tr. 92]. Two weeks later, plaintiff acknowledged a past history of alcoholism to Dr. Andrew Talkington but claimed to have been sober for *six* months. [Tr. 91].

In March 2004, Dr. Michael Kirk wrote, "He describes himself as a former heavy alcohol user. He says he drinks much less frequently now." [Tr. 106]. The following month, plaintiff told Dr. Mohamed that he does not drink alcohol at all. [Tr. 152]. The next month, he told Dr. Orvik that he consumes only "an occasional beer." [Tr. 126]. One month later, Dr. Joseph noted "he will drink an occasional beer. He states that he did have an alcohol problem, but quit in 1999 because he lost his license twice." [Tr. 140]. This is clearly a misstatement, since plaintiff admittedly was not sober until at least 2003.

As noted, plaintiff's most recent (and purportedly disabling) seizure was on Monday, March 8, 2004. Of interest, Dr. Kirk wrote on that day,

12

He does also note that over the weekend he did have a significant 'hangover'
on Saturday morning after having consumed 4 beers the night before. He said
he felt sickly through the day, but his symptoms resolved by Saturday night
[March 6] and he felt back to baseline by the time he returned back to work
this morning [March 8].

[Tr. 106-07]. The temporal proximity of plaintiff's seizure and "significant 'hangover'" is

noteworthy, particularly since Dr. Wilson opined in 2000 that plaintiff's cognitive

impairments may be related to substance abuse. [Tr. 90]. As mentioned above, on remand

the Commissioner may wish to explore this issue further.

For the reasons cited herein, the court is not satisfied that "all essential factual

issues have been resolved [or that] the record adequately establishes [] plaintiff's entitlement

to benefits." *Faucher,* 17 F.3d at 176. Benefits will not be awarded by this reviewing court

at this time. *See id.*

IV.

*Conclusion*

The final decision of the Commissioner will be reversed and remanded for

reevaluation consistent with this opinion. An order will be entered.

ENTER:

_____
        s/ Leon Jordan
      United States District Judge

13